STATE OF LOUISIANA

VERSUS

ENYEL BELLO-URBINA

NO. 24-KA-8

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 22-5168, DIVISION "I"
HONORABLE NANCY A. MILLER, JUDGE PRESIDING

October 30, 2024

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
John J. Molaison, Jr., and Scott U. Schlegel

<u>**CONVICTION AFFIRMED; SENTENCE AFFIRMED IN PART AND**</u>
<u>**VACATED IN PART; REMANDED WITH INSTRUCTIONS**</u>
    **JGG**
    **JJM**
    **SUS**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
 Honorable Paul D. Connick, Jr.
 Thomas J. Butler
 Darren A. Allemand
 Eric Cusimano

COUNSEL FOR DEFENDANT/APPELLANT,
ENYEL BELLO-URBINA
 Jane L. Beebe

**GRAVOIS, J.**

Defendant, Enyel Bello-Urbina, was convicted of felony carnal knowledge of a juvenile, in violation of La. R.S. 14:80. He was sentenced to thirty months imprisonment at the Department of Corrections and ordered to pay a fine of two thousand dollars. On appeal, he challenges his conviction, arguing the State failed to prove that the victim was thirteen years of age or older but less than seventeen years of age at the time of the offense. For the reasons that follow, we affirm defendant's conviction and sentence, except that we vacate the portion of defendant's sentence that imposed a financial obligation and remand this matter to the trial court for compliance with La. C.Cr.P. art. 875.1.

## PROCEDURAL HISTORY

On October 21, 2022, the Jefferson Parish District Attorney filed a bill of information alleging that defendant, on or between January 1, 2021 and January 3, 2022, violated La. R.S. 14:80, committing "carnal knowledge of a known juvenile, DOB (08/03/2005)." Defendant was arraigned on December 8, 2022 and entered a plea of not guilty.

Defendant filed a Motion to Dismiss the Bill of Information on January 23, 2023, asserting that a birth certificate obtained by the defense on the alleged victim indicates that the victim was born on August 3, 2002, thereby confirming that the victim was at least eighteen years old at the time of the alleged offense, thus requiring dismissal of the charge against defendant. The State responded to the motion on May 11, 2023, asserting that the victim's age was an issue to be decided by the trier of fact at trial, rather than by the court pre-trial, and thus the Motion to Dismiss should be denied. The court denied the Motion to Dismiss on June 22, 2023.

On September 18, 2023, the case proceeded to trial before a six-person jury, and on the following day, the jury found defendant guilty as charged. On

September 25, 2023, the trial court sentenced defendant to thirty months imprisonment at the Department of Corrections. The court ordered defendant to pay a fine of two thousand dollars.[1]

On October 9, 2023, defendant filed a motion for appeal, which the court granted on October 11, 2023.

Defendant now argues on appeal that: 1) the court violated his right to confront his accusers; and 2) the evidence was insufficient as to his carnal knowledge of a juvenile conviction.

## FACTS

The Jefferson Parish Sheriff's Office ("JPSO") responded to a complaint concerning the whereabouts of the victim, A.J.R.[2] A.J.R. was subsequently located, found to be pregnant, and later gave birth to A.N.J. Defendant, Enyel Bello-Urbina, who was thirty-one years old at the time, was identified as the father of the baby. During trial, the State introduced evidence showing that A.J.R. was born on August 3, 2005, making her thirteen years of age or older but less than seventeen years of age during the date range of the alleged offense.[3] Conversely, the defense presented evidence indicating that A.J.R. was born on August 3, 2002, making her older than seventeen during the date range of the alleged offense.

JPSO Detective Andrew Cook with the Special Victims Division arrived at the scene on Houma Boulevard, where defendant and A.J.R. previously lived, and communicated with T.J.R., the victim's sister, using an interpreter. At the time, the whereabouts of A.J.R. were unknown, and this was the focus of the

---

[1] The court also ordered that defendant register as a sex offender for fifteen years upon his release from custody.

[2] This Court adheres to the policy that "this Court's published work will use only initials to identify the victim and any defendant or witness whose name can lead to the victim's identity (*i.e.*, parent, sibling, or relative with the same last name as the victim)." *See State v. E.J.M., III*, 12-774, 12-732 (La. App. 5 Cir. 5/23/13), 119 So.3d 648, 652 n.1.

[3] As indicated above, the bill of information alleged that the offense occurred between January 1, 2021 and January 3, 2022.

investigation. T.J.R. provided information about defendant and A.J.R.'s cell phones, and Detective Cook attempted to locate the victim and defendant through cell phone pings. During his investigation, Detective Cook found biographical information on defendant, corroborating his birthdate of January 27, 1991. Eventually, A.J.R. was located at 120 North Arnault in Metairie, where she had been living with defendant for several weeks and was found to be several months pregnant.

The parties stipulated to the admission of A.J.R.'s medical records from Children's Hospital and Touro Hospital. Detective Cook discussed A.J.R.'s medical records from Children's Hospital from December 30, 2021, which was a few days after the initial complaint was made in this case. The records indicated that defendant brought A.J.R. and T.J.R. to the United States from Nicaragua. Defendant lived with them for the first six months after their arrival at the Houma Boulevard address. The records confirmed that defendant is thirty-one years old and is the father of A.J.R.'s child. In reviewing the medical records, Detective Cook confirmed that they indicated A.J.R. presented to the emergency department as four to five months pregnant. He stated that this was consistent with his investigation and with the birth of A.J.R.'s child.

A.J.R. gave birth at Touro Hospital on May 6, 2022. Detective Cook reviewed A.N.J.'s birth certificate, and confirmed that the birth certificate indicated A.J.R.'s age at the time she gave birth as sixteen years old. He stated that this finding was consistent with the biographical information and medical records he obtained during his investigation. He then reviewed the medical records regarding A.J.R.'s delivery of her child. Detective Cook testified that A.J.R.'s birthdate, August 3, 2005, was consistent with the information in her child's birth certificate, medical records related to her pregnancy and delivery, and other records obtained during his investigation.

Detective Cook stated that the only information suggesting a different birthdate than August 3, 2005 was an ID that he recovered. The photo ID, issued from Nicaragua, listed the birthdate as August 3, 2002. He acknowledged that he was not an expert in Nicaraguan documents and consulted an agent from the United States Border Patrol who had better knowledge of similar IDs. He indicated that the only documents he obtained from Border Patrol were the initial documentation they obtained when A.J.R. and T.J.R. crossed the border.

Detective Cook explained that the date of birth he had for A.J.R. was based on what her sister initially told him. Although he initially said A.J.R. did not directly provide her date of birth but gave it to the hospital, he later stated he did not know whether the hospital obtained the date of birth from A.J.R. or T.J.R. He had not seen a copy of A.J.R.'s birth certificate or her passport. He testified that he did not attempt to contact the Register of Persons in Nicaragua to validate A.J.R.'s age and was unsure if anyone else had done so. Detective Cook requested the Border Patrol Agency to contact the Consulate of Nicaragua on his behalf to obtain information.

Following defendant's arrest, Detective Cook informed him of his rights using a form and obtained his statement on January 4, 2022, with the assistance of another JPSO detective, Detective Castro, who served as an interpreter. He testified that defendant spoke freely about his relationship with A.J.R., admitted to a sexual relationship between them, and acknowledged that he was aware of the pregnancy. Defendant told him A.J.R. was nineteen years old. Buccal swabs from defendant, A.J.R., and her child confirmed that defendant was the child's father.

Ana Osborne testified that she runs a business that does translations and transcriptions for other parties. She transcribed defendant's January 4, 2022 statement. According to the transcript, defendant acknowledged that his date of birth was January 27, 1991 and he was thirty years old. He entered the United

States from Nicaragua six years ago. Defendant stated that his brother informed him that a girl named "Selena" is making the accusation against him.[4] He went to work in Washington and when he returned, he found that a "bunch of them" were in his apartment, including T.J.R. and A.J.R. Defendant later indicated that he and A.J.R. moved to their current address at "120 North Arnold" on December 13. He said that he and A.J.R. last had intercourse on the twenty-sixth, the evening before his arrest, in that apartment.

Defendant provided that A.J.R. is between nineteen and twenty-one years old.[5] He knew her older sister all of her life. He stated that T.J.R. and A.J.R. arrived in the United States illegally and came to his house on Houma Boulevard from immigration. He believed they arrived between March and May of 2021, and he confirmed he first became intimate with A.J.R. during that time period. Defendant stated they were boyfriend and girlfriend. When further questioned about their marital status, defendant clarified that they were still getting to know each other and they had no legal or formal ties. Defendant acknowledged A.J.R. was pregnant, believing he was the father. He mentioned they were not always together and denied she was seeing someone else. He told Detective Castro that they learned she was pregnant when they visited a clinic, and she was four or five months along.

Border Patrol Agent Josue Breban Robles testified that he speaks Spanish and is knowledgeable about migration from Central American countries, including Nicaragua. Agent Robles confirmed his familiarity with T.J.R. and A.J.R., who initially entered the United States together on April 29, 2021. Agent Roble stated

---

[4] Ms. Osborne explained that defendant called the person who accused him "Selena," but later referred to her by T.J.R.'s first name.

[5] Detective Castro inquired about A.J.R.'s birthdate. Defendant responded vaguely, saying it was either August 2nd or 3rd and mentioned a possible year of 2001 or 2002. When the detective asked for clarification between the two years, defendant admitted he was not sure.

that they submitted a report to the Border Patrol intake. He confirmed that A.J.R. provided a birthdate of August 3, 2005, and that this birthdate matched later investigation findings. He stated that A.J.R. and T.J.R. are currently in Georgia, and A.J.R. expressed a lack of desire to participate in the prosecution. Agent Robles testified about several documents, including the ID, a memorandum that he prepared, and a birth certificate provided by the defense.

Agent Robles explained that A.J.R.'s ID would be referred to as an "alter" in identification. Part of his training at the academy involved identifying common mistakes when individuals falsify identifications, such as font type, size, and misspellings. The mistake on this ID specifically pertained to A.J.R.'s reported date of birth. The DOB on the ID says that she was born in 2002. He denied that this was consistent with any information he had regarding A.J.R., stating that it did not match. He explained that the Nicaraguan ID includes a bar code, "370-096140-0005X." Agent Robles testified, "the 370, this number, the 096140, it has to match the DOB identified here, which is supposed to be 03/08/2002." Based on this barcode, A.J.R. was born in 1940, which was his "first red flag." He testified that no other indicators on the front of the card suggested it was fraudulent. On the back of the ID, the "other red flag" was the misspelling of "domicilio." He explained that the "L" is capitalized when it is supposed to be lowercase.

Because discrepancies were identified, he contacted "Customs and Border Protection attention" at the United States Embassy in Nicaragua. They were able to confirm the information on this ID was false. He affirmed that this action confirmed the date of birth as August 3, 2005. Thereafter, in January 2022, Agent Robles prepared a memorandum regarding the validity of the ID and A.J.R.'s birthdate. He stated that they create a memorandum any time they conduct research involving another agency. He added that it is signed to ensure documentation. Agent Robles testified that his research indicated a birthdate of

August 3, 2005. He confirmed that there was no evidence suggesting a birthdate of August 3, 2002, other than the fake ID. Agent Robles testified that he encounters hundreds of individuals entering the country with fake documents. He stated that A.J.R. was allowed to enter the country because she presented an ID indicating she was an adult.

Agent Robles' memorandum included a partial copy of a birth certificate stating her date of birth was August 3, 2005. When asked if it was a copy of the original, Agent Robles responded that the birth certificate was given to him by the "CBP Aperture" in the United States Embassy in Nicaragua. He confirmed that the information was obtained by someone who was "on the ground" and able to retrieve the document.[6] Agent Robles agreed that this partial copy of the birth certificate did not resemble the birth certificate provided by defense counsel.

At trial, both the State and the defense questioned Agent Robles about a birth certificate originally provided by the defense. Agent Robles explained that this document indicated a change to A.J.R.'s birth year from 2005 to 2002. He stated that this document was produced on January 10, 2023. He acknowledged that this birth certificate appears to be legitimate to him, but noted that he is not a custodian of records for the government of Nicaragua. He stated that this document was filed after he was initially consulted in this case about A.J.R.'s birthdate in January 2022.

_____

[6] In the memorandum, it is stated that it is from "Josue Breban-Robles Border Patrol Agent-Intelligence New Orleans Sector Intelligence Unit." The subject line reads: "Requesting Nicaraguan identification for [A.J.R.] (H/F/, 08/03/2005)." Below this, there is a paragraph that states:

> On January 6, 2022, I, Border Patrol Agent-Intelligence Josue Breban-Robles, from the New Orleans Border Patrol Sector, requested assistance to the Office of International Affairs-Latin America and Caribbean Division to acquire a Nicaraguan identification for [A.J.R.]. The Office of International Affairs directed my request to the U.S. Embassy, Managua, Nicaragua. On January 14, 2022, the government of Nicaragua confirmed the date of birth as August 3, 2005 for [A.J.R.]. The Nicaraguan government provided an official copy of the Nicaraguan identification (birth certificate).

Agent Robles was questioned regarding the apostille attached to the birth certificate. He explained that such documents are not commonly encountered at the border, he had not encountered a document with an attached apostille at the border, and this was the first time he had seen this type of document. He was unfamiliar with its purpose and had not received training on this type of document. He stated that he is not an expert in identifying Nicaraguan documents and his expertise lies in what he encounters regularly. In reviewing the document, he indicated that Nicaragua issued the apostille; it was signed by the registrar, the head of external persons, and it matched the birth certificate. Defense counsel directed him to the seal of the Nicaraguan Department of Foreign Relations, and Agent Robles relayed that it stated underneath the seal, "certificado nacimiento," which means birth certificate. He stated that the name on the document was A.J.R.'s.

When asked if he could determine if it was a copy of the original birth certificate, Agent Robles responded, "It is highly possible it is a copy of the original." He asserted that he could declare the ID as fake, but he could not definitively state the same for the defense's birth certificate. He pointed out that he could "see a discrepancy" in that birth certificate, but mentioned needing to request assistance from their past intelligence center. He agreed that "everything seems to have been done legally" and explained that "[e]verything matches the typical document that a government would provide as a birth certificate."

## ASSIGNMENT OF ERROR NUMBER TWO

### *Sufficiency of the Evidence*

Defendant argues on appeal that the evidence was insufficient to support the jury's verdict as to the actual year of A.J.R.'s birth.[7] Defendant asserts that the

---

[7] When the issues on appeal relate to both sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. *State v. Hearold*, 603 So.2d 731, 734 (La. 1992).

central question in this case is whether the victim was born in 2002 or 2005 and contends that it was the State's burden to prove this beyond a reasonable doubt.

The question of sufficiency of the evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal pursuant to La. C.Cr.P. art. 821. *State v. Williams*, 20-46 (La. App. 5 Cir. 12/30/20), 308 So.3d 791, 816, *writ denied*, 21-316 (La. 5/25/21), 316 So.3d 2. In the instant matter, defendant did not file such a motion; however, the failure to file a motion for post-verdict judgment of acquittal does not preclude appellate review of sufficiency of the evidence. *See State v. Faciane*, 17-224 (La. App. 5 Cir. 11/15/17), 233 So.3d 195, 205, *writ denied*, 17-2069 (La. 10/8/18), 253 So.3d 797.

In reviewing sufficiency of the evidence, an appellate court must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Lane*, 20-181 (La. App. 5 Cir. 1/27/21), 310 So.3d 794, 804. The directive that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to the actual trier of fact's rational credibility calls, evidence weighing, and inference drawing. *State v. Clifton*, 17-538 (La. App. 5 Cir. 5/23/18), 248 So.3d 691, 702. This deference to the fact-finder does not permit a reviewing court to decide whether it believes a witness or whether the conviction is contrary to the weight of the evidence. *State v. McKinney*, 20-19 (La. App. 5 Cir. 11/4/20), 304 So.3d 1097, 1102. As a result, under the *Jackson* standard, a review of the record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at the trial

---

Therefore, defendant's assigned error concerning sufficiency of the evidence will be addressed first.

established guilt beyond a reasonable doubt, but whether, upon review of the whole record, any rational trier of fact would have found guilt beyond a reasonable doubt. *Id.* at 1103.

In making this determination, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. *State v. Cuza*, 18-187 (La. App. 5 Cir. 11/28/18), 260 So.3d 754, 758, *writ denied*, 19-17 (La. 11/12/19), 282 So.3d 232. Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. *McKinney*, *supra*.

Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. *State v. Gatson*, 21-156 (La. App. 5 Cir. 12/29/21), 334 So.3d 1021, 1034. When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 provides that assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. *State v. Becnel*, 17-591 (La. App. 5 Cir. 6/27/18), 250 So.3d 1207, 1225. This is not a separate test from the *Jackson* standard, but rather provides a helpful basis for determining the existence of reasonable doubt. All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. *Id*.

Defendant was convicted of carnal knowledge of a juvenile in violation of La. R.S. 14:80. Felony carnal knowledge of a juvenile is committed when a person who is seventeen years of age or older has sexual intercourse, with consent, with a person who is thirteen years of age or older but less than seventeen years of age, when the victim is not the spouse of the offender and when the difference between the age of the victim and the age of the offender is four years or greater. *See* La.

R.S. 14:80(A)(1). Felony carnal knowledge of a juvenile is a general intent crime. Thus, the only intent necessary to sustain a conviction is established by the very doing of the proscribed act. *See* La. R.S. 14:11; *State v. Granier*, 99-3511 (La. 7/6/00), 765 So.2d 998, 1000; *State v. Boudreaux*, 23-993 (La. App. 1 Cir. 4/19/24), 390 So.3d 345, 356.

Defendant challenges his conviction on the basis that the State did not present sufficient evidence of A.J.R.'s age to support a conviction in this case. The bill of information alleged that the date range of the offense was between January 1, 2021 and January 3, 2022. At trial, Detective Cook testified that defendant's birthdate was January 27, 1991, and that defendant confirmed this information during his recorded statement. Defendant was, therefore, twenty-nine years old and thirty years old during the date range of the offense. Detective Cook also testified that A.J.R.'s child was born on May 6, 2022, as reflected in the medical records. Additionally, Detective Cook testified that a DNA analysis confirmed that defendant was the father of A.J.R.'s child. This was supported by testimony and the DNA report presented by Dr. Marcela Zozaya. Thus, we find the jury could have deduced that defendant, being over the age required in the statute, engaged in sexual intercourse with A.J.R., who was not his spouse.

Furthermore, in order to prove defendant's guilt, the State was required to prove that the victim, A.J.R., was thirteen years of age or older but less than seventeen years of age. Neither A.J.R., nor her sister, T.J.R., testified at trial. To show that A.J.R. was born on August 3, 2005, thereby making her between fifteen and sixteen years old during the date range of the offense, the State presented multiple medical records, the testimony of Detective Cook, and both the testimony and a prepared memorandum from Agent Robles, which included the partial birth certificate.

At trial, the parties agreed to admit A.J.R.'s medical records, including those from Children's Hospital and Touro Hospital. Detective Cook testified that the records from Children's Hospital, which were published to the jury, indicated that A.J.R., born on "08/03/05 (16 yrs)," was four to five months pregnant when she arrived at the emergency department on December 30, 2021. He also reviewed the medical records related to the delivery of A.J.R.'s child, which were also published to the jury. Detective Cook confirmed that A.J.R.'s birthdate was listed as August 3, 2005 in these records and this was consistent with the records obtained during his investigation. He explained that the date of birth he had for A.J.R. was based on what her sister initially told him. Although he initially said A.J.R. did not directly provide her date of birth but gave it to the hospital, he later stated he did not know whether the hospital obtained the date of birth from A.J.R. or T.J.R.

The State also presented the testimony of Agent Robles, who confirmed knowing T.J.R. and A.J.R., who entered the United States together on April 29, 2021. He confirmed A.J.R.'s birthdate as August 3, 2005 and stated such was consistent with his investigation findings. Agent Robles discussed an ID issued in Nicaragua, which listed A.J.R.'s birthdate as August 3, 2002. He identified discrepancies in the ID and concluded it was falsified. He indicated that he had received only initial border-crossing documents from Border Patrol. In addition, Agent Robles also testified about his memorandum, which confirmed A.J.R.'s birthdate as August 3, 2005, based on his investigation. He explained that the memorandum had a partial copy of a birth certificate stating A.J.R.'s date of birth was August 3, 2005.

Conversely, the defense presented a birth certificate stating that A.J.R. was born on August 3, 2002, suggesting she was between eighteen and nineteen years old during the date range of the offense.

During trial, Agent Robles was questioned about the birth certificate provided by the defense. He explained that it showed an alteration of A.J.R.'s birth year from August 3, 2005 to August 3, 2002, and was dated January 10, 2023. Although Agent Robles acknowledged that the document appeared legitimate, he admitted his lack of expertise in Nicaraguan records and stated that he was unfamiliar with documents of this type. He confirmed that prior to the change, the document stated A.J.R.'s birthdate was August 3, 2005. He testified that he could not definitively determine its authenticity or if it was a copy of the original birth certificate. Agent Robles explained that he has not encountered documents with an apostille at the border and had not been trained to verify such documents. While he could confirm that the ID was fake, he could not definitively determine the authenticity of the birth certificate presented by the defense. He explained that he observed a discrepancy in the birth certificate, but indicated that resolving this would require additional assistance from past intelligence. He acknowledged that the birth certificate appeared to match the typical format of a government-issued birth certificate. The defense did not provide further testimony or additional evidence to confirm the authenticity of the birth certificate.

In this matter, the jury reviewed all the conflicting evidence concerning A.J.R.'s birthdate presented at trial. The credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. *State v. Gonzalez*, 15-26 (La. App. 5 Cir. 8/25/15), 173 So.3d 1227, 1233. It is not the function of the appellate court to assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442, 443; *State v. Chester*, 19-363 (La. App. 5 Cir. 2/3/21), 314 So.3d 914, 944, *writ denied*, 21-350 (La. 6/8/21), 317 So.3d 321.

In the present matter, the jury heard all the testimony, viewed all of the evidence presented at trial, and found defendant guilty. Upon review, we conclude

that a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found beyond a reasonable doubt that the evidence was sufficient under the standard set forth in *Jackson* to support defendant's conviction. As such, this assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER ONE

### *Right of Confrontation*

In this assignment of error, defendant argues the trial court erred in denying his right to confront his accusers by allowing into evidence medical records and Border Patrol documents containing information communicated between two people who did not testify at trial. Defendant provides that before the trial, the court ruled against the "Motion to Quash/Dismiss," and during the trial, when presented before a different judge, the issue was raised again and also denied. He contends that he objected to the medical records and border entry report as proof of A.J.R.'s age, emphasizing they were hearsay as neither Detective Cook nor the Border Patrol agent were present when A.J.R. and T.J.R. allegedly stated the birth year as 2005. He argues it was improper for them to testify about the birth year. Additionally, he claims neither A.J.R. nor T.J.R. testified at trial, yet Detective Cook and Agent Robles testified based on these records, despite not being present during the communication or being custodians of the records. Defendant emphasizes that whoever entered the birth year on these documents did not testify, yet the State relied solely on these documents as evidence of the victim's age.

Additionally, defendant explains that he obtained a copy of A.J.R.'s birth certificate, not the State. He asserts that the birth certificate he obtained indicated A.J.R.'s year of birth as 2002. He argues that he was denied the opportunity to cross-examine anyone with direct knowledge of A.J.R.'s birth year or how it was recorded as 2005 in the medical and Border Patrol documents. He argues that the reports were testified to and entered into evidence by witnesses who lacked

personal knowledge of A.J.R.'s birthdate.  This, he contends, violated his right to cross-examine accusers and deprived him of his right to present a defense.

Hearsay is a statement, other than one made by the declarant while testifying at the present trial, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(C).  Hearsay evidence is not admissible except as otherwise specified in the Code of Evidence or other legislation.  La. C.E. art. 802.  Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability.  *State v. Martin*, 458 So.2d 454, 460 (La. 1984).  Although a statement may constitute inadmissible hearsay, if the statement is merely cumulative or corroborative of other evidence, the admission of the evidence is harmless error. *State v. Hester*, 99-426 (La. App. 5 Cir. 9/28/99), 746 So.2d 95, 107, *writ denied sub nom. State v. Patterson*, 99-3217 (La. 4/20/00), 760 So.2d 342.

The Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to confront witnesses against him.  *State v. Jackson*, 03-883 (La. App. 5 Cir. 4/27/04), 880 So.2d 841, 852, *writ denied*, 04-1399 (La. 11/8/04), 885 So.2d 1118. In *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 1365, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."

Before trial, defense counsel argued that the defendant's right to confront A.J.R. was compromised by her absence, impacting the defense's ability to represent the defendant.  After the State rested, counsel reiterated this concern and criticized the use of medical records and non-testifying doctors to establish A.J.R.'s age, claiming it violated the Confrontation Clause.  On appeal, the focus

shifted to whether the trial court erred by admitting the medical records and Border Patrol documentation as hearsay.

Regarding the medical records, the parties agreed on redactions before trial, and the court admitted the redacted medical records as State's Exhibits 1, 2, and 4 into evidence without objection from the defense. The defense only raised objections when Detective Cook was questioned about the birthdate's consistency in State's Exhibit 3, A.N.J.'s birth certificate, and the medical records related to A.J.R.'s delivery, State's Exhibit 4. The defense alluded to the medical records as hearsay after the State rested. Similarly, as for the Border Patrol documentation, State's Exhibit 12 was a memorandum prepared by Agent Robles confirming A.J.R.'s ID and birthdate. During Agent Robles testimony, the defense objected to the exhibit, arguing that it did not resemble a birth certificate as he understood it and appeared to have been produced by Border Patrol. The judge overruled the objection, and the document was admitted into evidence. The defense did not raise objections based on hearsay or confrontation issues related to this document at trial.

A defendant must make a contemporaneous objection "to a claimed confrontation violation" in order to preserve it for appellate review. *State v. Harris*, 17-303 (La. App. 5 Cir. 12/20/17), 235 So.3d 1354, 1368, *writ denied*, 18-160 (La. 6/15/18), 257 So.3d 675. The contemporaneous objection rule, La. C.Cr.P. art. 841(A), not only provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence," but the rule also requires that a defendant state the grounds for the objection. *State v. Smith*, 11-638 (La. App. 5 Cir. 3/13/12), 90 So.3d 1114, 1123. Further, a defendant is limited on appeal to those grounds articulated at trial. *State v. Snyder*, 12-896 (La. App. 5 Cir. 10/9/13), 128 So.3d 370, 377, *writ denied*, 13-2647 (La.

4/25/14), 138 So.3d 643. Thus, we find that defendant cannot raise these arguments on appeal regarding the Border Patrol documentation.

As to the medical records, the defense stipulated to the admission of State's Exhibits 1, 2, and 4, which are the medical records in this case. During trial, the defense did not object when the Children's Hospital records (State's Exhibit 1) and the Touro Hospital records (State's Exhibit 2) were admitted and published to the jury. *See State v. Simmons*, 00-35 (La. App. 5 Cir. 7/25/00), 767 So.2d 860, 861-62 (finding the defendant acquiesced to the admission of a police report based on the defendant's stipulation. "A stipulation has the effect of withdrawing a fact from issue and disposing wholly with the need for proof of that fact"). Afterwards, the defense only objected to A.N.J.'s birth certificate (State's Exhibit 3) and the medical records related to A.J.R.'s delivery (State's Exhibit 4) when Detective Cook was asked if the birthdate, August 3, 2005, was consistent across the records. Detective Cook's testimony was merely cumulative of the birthdate included in the medical records that were already admitted without objection. *See Hester*, *supra*.

In any event, even assuming that Detective Cook's testimony was properly objected to and did not meet an exception to the hearsay rule, we find that it was cumulative and corroborative of other uncontested evidence, and any error in admitting it was harmless. We consider that the medical records, State's Exhibits 1 and 2, were published to the jury. State's Exhibit 1 reflects A.J.R.'s date of birth of "08/03/05 (16 yrs)," and State's Exhibit 2 indicates that she is sixteen years old. Therefore, the jury was free to draw reasonable inferences from the evidence. In light of the foregoing, we conclude that this assignment of error is without merit.[8]

---

[8] *See State v. Diggs*, 19-956 (La. App. 1 Cir. 12/27/18), 294 So.3d 487, 493, 495-96, *writ denied*, 20-181 (La. 7/24/20), 299 So.3d 69, where the defendant argued that the trial court erred in allowing the State to elicit testimony regarding his Facebook messages. The First Circuit mentioned the defendant did not object when the Facebook messages were admitted into evidence prior to the detective's testimony. The court found that the detective's testimony was merely cumulative of the statements that were already admitted without objection. It further found that even assuming that this testimony contained hearsay, it was cumulative and

# ERRORS PATENT REVIEW

The record was reviewed for errors patent according to La. C.Cr.P. art. 920, *State v. Oliveaux*, 312 So.2d 337 (La. 1975), and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990).

## *Financial Hardship Hearing*

As a part of defendant's sentence under La. R.S. 14:80,[9] the trial court ordered defendant to pay a fine of $2,000. The sentencing minute entry reflects the same information. La. C.Cr.P. art. 875.1 requires the court to conduct a hearing to determine whether payment of any fine, fee, cost, restitution, or monetary obligation would cause substantial financial hardship to defendant or his dependents. Upon review of the record, there is no indication that the trial court conducted such a hearing or that the judicial determination was waived. Accordingly, due to the requirements of La. C.Cr.P. art. 875.1, we vacate the financial obligation imposed on defendant as part of his sentence and remand this case for compliance with La. C.Cr.P. art. 875.1. *See State v. Smith*, 23-308 (La. App. 5 Cir. 2/28/24), 382 So.3d 1121, 1128 (citing *State v. Douglas*, 22-752 (La. App. 3 Cir. 2/23/23), 358 So.3d 580).

## *Advisal of Post-Conviction Relief*

The sentencing transcript and minute entry do not reflect that the trial court advised defendant of the two-year prescriptive period for filing an application for post-conviction relief. La. C.Cr.P. art. 930.8 provides that a defendant shall have two years after the judgment of conviction and sentence has become final to seek

---

corroborative of other uncontested evidence, and any error in admitting it was harmless. Also, the court pointed out that the members of the jury were allowed to read the statements and could draw their own reasonable inferences therefrom. Considering this, the court found no merit to the assignments of error.

[9] At the time of the offense, La. R.S. 14:80(D)(1) provided, in pertinent part: "Whoever commits the crime of felony carnal knowledge of a juvenile shall be fined not more than five thousand dollars, or imprisoned, with or without hard labor, for not more than ten years, or both[.]"

post-conviction relief. If the trial court fails to advise, or provides an incomplete advisal pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion. *See State v. Becnel*, 18-549 (La. App. 5 Cir. 2/6/19), 265 So.3d 1017, 1022. Accordingly, we advise by way of this opinion, that no application for post-conviction relief, including an application which seeks an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922. *See State v. Barnett*, 18-254 (La. App. 5 Cir. 4/3/19), 267 So.3d 209, 235.

## DECREE

For the foregoing reasons, defendant's conviction and sentence are affirmed, except that the portion of defendant's sentence that imposed a financial obligation is vacated and this matter is remanded to the trial court for compliance with La. C.Cr.P. art. 875.1.

**CONVICTION AFFIRMED; SENTENCE AFFIRMED IN PART AND VACATED IN PART; REMANDED WITH INSTRUCTIONS**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**OCTOBER 30, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 24-KA-8

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE NANCY A. MILLER (DISTRICT JUDGE)
DARREN A. ALLEMAND (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          JANE L. BEEBE (APPELLANT)

**MAILED**
ERIC CUSIMANO (APPELLEE)
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053